UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CANVS CORPORATION,

        Plaintiff,

v.                                          Case No:  2:14-cv-99-FtM-38MRM

NIVISYS, LLC,

        Defendant.
_____/

## **ORDER**[1]

This matter comes before the Court on Defendant Nivisys, LLC's Motion for Fees and Costs (Doc. #85) filed on December 1, 2015.  Plaintiff CANVS Corporation filed a Response in Opposition (Doc. #88) on December 28, 2015.  The matter is ripe for review.

## **Background**

This is a patent infringement action.  CANVS owns United States Patent No. 6,911,652 ("'652 Patent" or "Patent"), titled "Low Light Imaging Device."  The Patent describes a device that combines the benefits of night vision and thermal vision technology to create an enhanced image, providing the user a tactical advantage in low light environments. '652 Patent.  Nivisys manufactures and sells Thermal Acquisition Clip-

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

On System ("TACS") products[2] that, when attached to certain models of night vision devices, also create a device that combines night vision and thermal vision technology.

CANVS filed this action believing these TACS products induce infringement and contribute to the direct infringement of the Patent. Nivisys responded by filing counterclaims for non-infringement and invalidity of the Patent. After the Court held a *Markman* hearing and construed the claims at issue (Doc. #73), the parties filed a Joint Motion for Consent Judgment (Doc. #79). The Court granted the Motion and entered judgment in favor of Nivisys on both the infringement claims and non-infringement counterclaim. (Doc. #80). The parties then agreed to voluntarily dismiss the invalidity counterclaim. (Doc. #82). With no claims remaining, Nivisys now seeks to recover the costs and fees it incurred in defending this action.

## Discussion

A court may award reasonable attorney fees to the prevailing party of an "exceptional" patent case. *See* 35 U.S.C. § 285. For many years, a case was exceptional only if it either involved "material inappropriate conduct" or was both "objectively baseless" and "brought in subjective bad faith." *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Recently, however, the Supreme Court relaxed these requirements. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). Now, a patent case is exceptional if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. "[T]here is no precise rule or formula for making these

---

[2] Nivisys also manufactures and sells a mobile version of its product, known as a TACS-M. The Court will refer to both versions as "TACS."

determinations." *Id.* (alteration and citation omitted). This is a discretionary inquiry, considering the totality of the circumstances. *Id.*

*1. Nivisys Qualifies as the Prevailing Party*

To qualify as the prevailing party, the Federal Circuit requires "(1) that the party receive[] at least some relief on the merits, and (2) that relief [] materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *SSL Servs. LLC v. Citrix Sys., Inc.,* 769 F.3d 1073, 1086 (Fed. Cir. 2014) (citations omitted). Although Nivisys neglects to argue why it qualifies as the prevailing party, CANVS argues that two facts prevent Nivisys from achieving this status: (1) Nivisys' invalidity counterclaim was voluntarily dismissed, and (2) Nivisys obtained a consent judgment in its favor, not a judgment on the merits. The Court disagrees.

Contrary to CANVS' argument, a party need not prevail on every claim to achieve prevailing party status. *See id.* So the fact that the parties agreed to voluntarily dismiss Nivisys' invalidity counterclaim does not prevent Nivisys from achieving this status.[3] The same holds true for the consent judgment. This judgment provides at least some relief on the merits and materially alters the parties' relationship in a way that directly benefits Nivisys. To be sure, the Federal Circuit routinely affirms fee awards under § 285 arising from the entry of a consent judgment. *See, e.g., Cartner v. Alamo Group, Inc.*, 561 F.

---

[3] It appears CANVS provided Nivisys with a covenant not to sue in order to facilitate this voluntary dismissal. (Doc. #86-1 at 20-26). If this is true, Nivisys is the prevailing party as to the invalidity counterclaim. *See Highway Equip. Co. v. FECO, Ltd.,* 469 F.3d 1027, 1035 (Fed. Cir. 2006) ("[A]s a matter of patent law, the dismissal with prejudice, based on the covenant [not to sue] and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [a party's] fee claim under 35 U.S.C. § 285.").

App'x 958 (Fed. Cir. 2014) (affirming a fee award under § 285 in a case where "the parties agreed to a consent judgment of noninfringment"). Thus, Nivisys qualifies as the prevailing party in this action.

   2. *Nivisys' Arguments that this Action is Exceptional are Unpersuasive*

Having achieved this status, Nivisys posits two theories for why this case is exceptional. The first alleges CANVS improperly filed suit against a product with features that it disclaimed during patent prosecution. This argument is unpersuasive. When addressing whether fees should be awarded for "litigation pursued in spite of case-dispositive specifications or prosecution histories," courts typically allow fees only where "the plaintiff asserted its claim in bad faith"; "proposed a frivolous claim construction"; "ignored the entirety of the specification and prosecution history"; and "derived no support from the intrinsic record." *Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-CV-06637-RS, 2015 WL 4940635, at *4 (N.D. Cal. Aug. 19, 2015) (citation omitted). This includes both pre-*Octane* decisions such as *MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907 (Fed. Cir. 2012), and post-*Octane* decisions such as *Vasudevan*. None of these acts are present here.

The prosecution history shows CANVS secured its patent by distinguishing prior art. (Doc. #73 at 17). That distinction, as CANVS explained at the time, was the invention's ability to separately and independently control its thermal image adjustment assembly and image intensification adjustment assembly.[4] (Doc. #73 at 17). This ability provided a significant advantage over prior art because the user gained precise control

---

[4] The "thermal image adjustment assembly" adjusts the thermal image whereas the "image intensification adjustment assembly" adjusts the night vision image.

4

over how much of the thermal image or night vision image[5] appeared in the final, combined fusion image. (Doc. #73 at 17). Yet, according to Nivisys, the accused product cannot independently and separately adjust both image adjustment assemblies.

As Nivisys explains, the accused product is a thermal imaging system that attaches to pre-owned night vision devices. Once attached, the accused product creates a combination thermal-night vision image by feeding the thermal image into the night vision device's lens. While the thermal image adjustment assembly is found on the accused product itself, the image intensification adjustment assembly is found on the pre-owned night vision device. As part of the accused product itself, the thermal image adjustment assembly can independently and separately control the quantity of thermal image being fed into the night vision device lens. Whereas the image intensification adjustment assembly, as part of the night vision device into which the thermal image is fed, cannot independently adjust the night vision image. This is because after the thermal image is fed into the night vision device, it joins the night vision image before the night vision image reaches its respective adjustment assembly. So, as Nivisys explains, when a user attempts to adjust the brightness of the night vision image, the user also adjusts some aspect of the thermal image that is being fed into the night vision device. Because CANVS disclaimed any product lacking the ability to independently adjust both assemblies while it was prosecuting the Patent, Nivisys believes this action rises to the level of exceptionality.

Nivisys relies on *MarcTec*, 664 F.3d 907, to support this argument. In *MarcTec*, the patentee secured a patent for his surgical implant by distinguishing prior art on two

---

[5] The night vision image is also known as an enhanced photon based image. For simplicity, the Court will use the term "night vision image."

basis – (1) by explaining that his invention used a coating material that required heat to bond, and (2) by disclaiming "stents." 664 F.3d at 912-913. Faced with indisputable evidence that the accused product bonded at room temperature and qualified as a stent, the patentee proposed a claim construction that lacked any requirement for heat. The Federal Circuit found this proposed construction was both frivolous and asserted in bad faith. *Id.* at 918. The Federal Circuit explained that the patentee could not "claim to be ignorant of the references to heat in the claims, the language in the specification discussing the importance of heat to the bonding process, or [the patentee's] statements to the PTO." *Id.* at 919. Because the proposed construction "was so lacking in any evidentiary support," the Federal Circuit found that the action was exceptional under the stringent pre-*Octane* standard.

      Unlike the patentee in *MarcTec*, CANVS did not ignore the entirety of the specification and prosecution history when it brought this action and asserted its proposed constructions. When confronted with its statements to the PTO relating to the separate and independent control feature, CANVS conceded it was bound to its statements. Yet it also fashioned an argument for why its proposed construction complied with both the specification and prosecution history. While this argument proved unsuccessful, there is no evidence this argument was asserted in a frivolous manner or in bad faith. Nor did CANVS misrepresent the law to the Court or encourage the Court to ignore the intrinsic record. Simply put, CANVS's pursuit of this action in the face of its statements to the PTO does not warrant finding this case is exceptional, even under the less stringent post-*Octane* standard.

Nivisys also posits that this action is exceptional because CANVS "filed suit without any basis for its allegation that the accused product satisfies the three 'image' limitations of the asserted claims." The Court disagrees. Similar to its argument above, Nivisys argues the accused product lacks another requisite feature of the Patent – the ability to generate three distinct images. While the accused product can generate a separate and distinct thermal image, it cannot generate separate and distinct night vision and output images. This is because once the thermal image is fed into the night vision device, the night vision device can produce only a night vision image that incorporates some aspect of the thermal image. And, without separate and distinct thermal and night vision images, the accused product cannot combine these images into the final, fused image, as required by the Patent.

The only support Nivisys provides for the above argument is *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981 (Fed. Cir. 2000). But *View Eng'g* does not support Nivisys' argument. There, the Federal Circuit analyzed whether the district court abused its discretion in awarding sanctions under Fed. R. Civ. P. 11, not whether the case was exceptional for the purposes of awarding fees under § 285. *View Eng'g, Inc.*, 208 F.3d at 985. The Federal Circuit focused on several facts not present here. Most notably, the Federal Circuit found the patentee "had no basis for its [infringement] counterclaims." *Id.* Instead of conducting a pre-suit investigation of the accused product, the patentee based its infringement claims on the alleged infringer's advertising materials and statements made to its customers. *Id.* When asked "exactly why, on an element by element basis," the patentee felt the accused product infringed on one of the patents, the patentee

"responded that it could not do so in that sort of detail until it learned what [the accused product] actually did." *Id.*

Notwithstanding the fact that Nivisys is seeking fees pursuant to § 285 rather than Rule 11, *View Eng'g* is distinguishable from this case.  Unlike the patentee in *View Eng'g*, there is no evidence CANVS summarily filed this action without any basis for its infringement claims.  Although entry of the Consent Judgment prevented the Court from analyzing the infringement claims, CANVS insists that it conducted a pre-suit investigation and had an expert witness ready to testify in support of its claims.  There is no reason for the Court to doubt this averment.  Nor is the Court aware of any other reason to find this case is exceptional.  After the Court issued its Claim Construction Order, CANVS decided against pursuing this action further and agreed to a consent judgment in Nivisys' favor.  This concession "undoubtedly reflect[s] fulfillment of [CANVS'] duty to assess the soundness of its pending claims and to accurately represent to the Court the strengths of [its] case." *Mears Tech., Inc. v. Finisar Corp.,* No. 2:13-CV-376-JRG, 2015 WL 9269243, at *3 (E.D. Tex. Dec. 21, 2015).  Without any evidence illustrating that the substantive strength of CANVS' litigating position or CANVS' conduct in this action rises to the level of exceptionality, the Court declines to make such a finding.[6]

Accordingly, it is now

**ORDERED:**

1. Defendant NVISYS, LLC's Motion for Fees and Costs (Doc. #85) is **DENIED**.

2. Plaintiff CANVS Corporation's Motion to Strike (Doc. #86) is **DENIED as moot**.

---

[6] CANVS initially responded to the instant Motion by filing a Motion to Strike (Doc. #86).  Having determined the instant Motion will be denied, the Motion to Strike is denied as moot.

**DONE** and **ORDERED** in Fort Myers, Florida, this 18th day of February, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record